REVISED August 23, 2007

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-70039

LEON DAVID DORSEY, IV,

Petitioner - Appellant,

VERSUS

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice, Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

Before DAVIS, BARKSDALE and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner Leon David Dorsey, IV, was convicted of capital murder in Texas and sentenced to death. The district court granted a certificate of appealability (COA) on two of Dorsey's claims. The first claim based on one or more jurors' exposure to extraneous material fails under harmless error analysis. The second claim, a Batson claim relating to juror Jerry Riley, is procedurally barred. Dorsey also seeks COA on a claim that his constitutional rights were violated by the trial court's denial of his challenge for cause against four venire persons who exhibited a bias in favor of the death penalty. Because Dorsey exercised his peremptory challenges to strike all the jurors at issue, there is no claim that the jury that heard the case was not impartial. Accordingly all requested relief is

1

DENIED.

## I.

## A.

The Court of Criminal Appeals summarized the relevant facts of the crime in its opinion on direct appeal:

The evidence presented at trial showed that, around midnight on April 4, 1994, two employees at a Blockbuster Video store in Dallas were robbed and murdered. The in-store video camera recorded the crime and shows that the perpetrator was a black male with short hair. Employee Brad Lindsey was shot once in the back; employee James Armstrong was shot twice. Later that day, [Dorsey] admitted committing the robbery and murders to his girlfriend, Arrietta Washington, and to an acquaintance, Antwan Hamilton. In an interview with a newspaper reporter, [Dorsey] stated that he had burned the jacket he had worn that night and would not disclose the location of the murder weapon. Washington braided extensions into [Dorsey's] hair as a disguise. Later that week, she reported [Dorsey's] admissions to the police. The police interviewed [Dorsey], but he denied any involvement. At the time, police erroneously believed that [Dorsey] was too tall to be the perpetrator, and he was not charged with the crime, which remained unsolved until the case was reopened in 1998.

During the 1998 investigation, police sent the videotape of the robbery-murder to the F.B.I. for an analysis of the perpetrator's height. Based on the new estimate of the perpetrator's height and accurate information about [Dorsey's] height, police questioned [Dorsey] again, and he confessed. While awaiting trial, [Dorsey] again confessed to this offense during an interview with Dallas Morning News reporter Jason Sickles. A week before trial, [Dorsey] admitted committing the murders to inmate Raymond Carriere. [Dorsey] also sent a letter to another inmate, Rodrick Finley, offering him $5000.00 to take the blame for the murders. The police had previously suspected Finley of committing the crime.

* * *

In the instant case, [Dorsey] confessed to five different persons: his girlfriend, an acquaintance, the police, a news reporter, and a fellow inmate. In addition, the videotape depicted the perpetrator as a black male of medium build with short hair, wearing a multi-colored jacket. Washington and Hamilton both testified that the distinctive jacket of unusual design and colors worn by the shooter in the videotape looked just like one often worn by [Dorsey] before the offense. They also stated that they never saw [Dorsey] wear that particular jacket after the offense. Washington

2

also testified that [Dorsey] wore his hair in the same style as that of the shooter at the time of the offense, but that she had altered the appearance of [Dorsey's] hair after the offense by adding braid extensions. According to the F.B.I. expert who analyzed the videotape, the shooter was between 5'7" tall and 6' tall. [Dorsey] is 5'10" tall.

*Dorsey v. State*, slip op. at 2-5.

## B.

Dorsey was convicted of capital murder for intentionally and knowingly causing the death of James Lloyd Armstrong by shooting him with a firearm in the course of committing or attempting to commit robbery. Pursuant to the jury's answers to the special punishment issues, the Criminal District Court No. 5 of Dallas County, Texas sentenced Dorsey to death. The Court of Criminal Appeals affirmed Dorsey's conviction and sentence on direct appeal in an unpublished opinion delivered on October 2, 2002. *Dorsey v. State*, No. 73,836 (Tex. Crim. App. 2002). The United States Supreme Court denied Dorsey's petition for writ of certiorari on June 23, 2003. *Dorsey v. Texas*, 539 U.S. 944 (2003). Dorsey filed a petition for state writ of habeas corpus on May 6, 2002. The Court of Criminal Appeals adopted the trial court's findings and conclusions and, on its own review, denied relief in an unpublished order on February 18, 2004. *Ex parte Dorsey*, No. 58,161-01 (Tex. Crim. App. 2004).

Dorsey timely filed his federal habeas petition on December 17, 2004. The Director filed his answer on March 2, 2005. On July 31, 2006, the district court denied Dorsey's petition for federal habeas relief. Thereafter, on September 12, 2006, the district court granted Dorsey's request for a COA on two claims. Dorsey appealed the denial of habeas relief on those two certified issues. He also filed an application for COA in this Court on an additional claim alleging trial court error in the denial of his challenges for cause to four members of the venire, a claim upon which the trial court

3

did not grant COA.

C.

Additional facts necessary to the issues will be presented in the sections that follow.

II.

The district court granted COA on the first two issues raised by Dorsey in this petition and then denied Dorsey's petition for habeas relief. In a federal habeas corpus appeal, we review factual findings for clear error and legal issues de novo. Valdez v. Cockrell, 274 F.3d 941, 946 (5th Cir. 2001). Dorsey's petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of material indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). Without a direct conflict, a writ should be granted only if the state court identifies the correct governing legal principle but unreasonably applies the principle to the facts of the prisoner's case. Id.; Evans v. Cockrell, 285 F.3d 370, 374-75 (5th Cir. 2002).

A.

In his first claim for relief, Dorsey contends that he was denied due process of law and his right to be free from cruel and unusual punishment by the trial court's denial of his motion for mistrial after the jury wrongly considered State's Exhibit No. 123. The exhibit consisted of a Dallas Morning News reporter's interview transcript in which Dorsey described numerous extraneous offenses, which the trial court had admitted into evidence for record purposes only.

4

During guilt-innocence deliberations, one of Dorsey's jurors discovered the full transcript of the interview Dorsey had given to the reporter, Jason Sickles. Sickles had interviewed Dorsey and recorded the entire conversation. The transcript was 88 pages long and contained numerous admissions of bad acts and extraneous offenses. The full transcript was admitted for record purposes as Exhibit 123. A redacted version absent the admissions, Exhibit 110, was admitted for all purposes and played for the jury.

During deliberations, in response to a jury request for "all the evidence", all trial exhibits were provided to the jury. The full unedited version of the Sickles interview transcript was inadvertently included with the other exhibits from the trial. Approximately an hour and a half after the jury's initial request for all of the evidence, the court received a note, accompanied by the transcript labeled Exhibit 123. The note was signed by the jury foreman, Mark Pennington, and read "Should we have this? It appears to have evidence not brought out on the witness stand."

In response to the note, the trial court conducted a hearing and interviewed each juror individually. Juror Karen Quinton stated that she was skimming Exhibit 123, but stopped at page 11. She privately notified the foreman that the exhibit referred to some prior offenses. Pennington then wrote the note to the judge outside the presence of the other ten jurors. The hearing revealed that two other jurors were aware that the exhibit contained the full transcript but did not view it. The other jurors were unaware of the exhibit. Some jurors saw Quinton and Pennington talking but did not overhear what they were saying and neither Quinton nor Pennington told the other jurors about the exhibit. Both Quinton and Pennington knew the full exhibit referred to Dorsey's prior bad acts and offenses but only Quinton saw the nature of the acts. Both agreed to follow the court's instruction to set aside any knowledge from the full transcript. Quinton, Pennington and the other

5

two jurors who knew about the exhibit agreed that they would not consider it in their deliberations and assured the court that they would remain fair and impartial. The trial court allowed deliberations to proceed. Dorsey moved for a mistrial which was denied.

The Sixth Amendment guarantees that accused the right to a trial by an impartial jury. Parker v. Gladden, 385 U.S. 363, 364 (1966). A jury is initially cloaked with a presumption of impartiality. De La Rosa v. Texas, 743 F.2d 299, 306 (5th Cir. 1984). However, if a jury is exposed to an outside influence, a rebuttable presumption of prejudice arises. Drew v. Collins, 964 F.2d 411, 415 (5th Cir. 1992). In the context of a federal habeas review, even when there has been extrinsic influence on the jury, such error is subject to harmless error analysis. Pyles v. Johnson, 136 F.3d 986, 994 (5th Cir. 1998). Because the claim is presented as a collateral attack on a final state conviction, Dorsey is not entitled to habeas relief on the claim unless the extrinsic evidence of his prior crimes "had a substantial and injurious effect or influence in determining the jury's verdict." Id. at 995. The content of the extrinsic material, the manner in which it came to the jury's attention, and the weight of the evidence against the defendant are all relevant to the determination of the harm. United States v. Luffred, 911 F.2d 1011, 1014 (5th Cir. 1990).

We agree with the district court that any error in this case was harmless. One juror was exposed to factual information about some of Dorsey's prior bad acts in the unedited transcript. Another juror knew only that the transcript contained information about prior bad acts. None of the other jurors knew about the extrinsic material. All of the jurors were questioned to insure that they would disregard the material and that they could be impartial in their deliberations. In addition, the evidence against Dorsey was overwhelming. He confessed to four different people, which confessions were corroborated by the videotape from the store showing a man matching Dorsey's

6

description. Accordingly, the district court correctly determined that the state court's decisions on direct appeal and collateral review are not contrary to federal law.

B.

Dorsey also maintains that the trial court denied his constitutional right to equal protection under the law because the state improperly used a peremptory challenge to remove an African-American man, Jerry Riley, from the jury. The state court rejected Dorsey's Batson claim because Dorsey failed to raise the issue on direct appeal.[1] The Texas Court of Criminal Appeals has held that record based claims not raised on direct appeal will not be considered in habeas proceedings. Ex parte Gardner, 959 S.W.2d 189, 191 (Tex.Crim.App. 1996, clarified on reh'g Feb. 4, 1998). This procedural rule was firmly established by Gardner before Dorsey's appeal following his trial in 2000. This court recognizes that the Gardner rule sets forth an adequate state ground capable of barring federal habeas review. Busby v. Dretke, 359 F.3d 708, 719 (5th Cir. 2004) and cases cited therein. Accordingly, the district court erred by failing to apply the procedural bar to this issue. Dorsey makes no claim of cause and prejudice and does not assert that a miscarriage of justice would result if the claim is not considered on its merits. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

III.

Dorsey also seeks review of the denial of habeas relief on his claim that the trial court erred in denying his challenge for cause of four venire persons who exhibited a bias in favor of the death penalty. The district court did not grant COA on this issue. Unless a COA is granted, this court lacks jurisdiction on the appeal of this issue. 28 U.S.C. § 2253(c)(1)(A). In order for this court to grant COA, Dorsey must make a substantial showing of the denial of a constitutional right. 28 U.S.C. §

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986).

2253(c)(2); Barefoot v. Estelle, 463 U.S. 880, 893 (1983). This standard requires a showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For claims that were adjudicated on the merits in state court, deference to the state court's decision is required unless the adjudication was "contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Dorsey fails to meet this standard for any of the four venire persons at issue - Merrifield, O'Keefe, Brunson and Staten.

A prospective juror's views on capital punishment do not provide a basis for removal for cause unless those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985). The factual question whether the juror is biased and whether his answers can be believed are questions for the trial court. Id. at 423-24.

Venire person Merrifield initially indicated a bias in favor of the death penalty, saying that he would automatically assess the death penalty after a verdict of guilty. He also said that the fact that a person committed capital murder was probably enough evidence to demonstrate future dangerousness and expressed confusion about the necessity of special issue number one. The trial judge briefly explained the guilt-or-innocence phase, the evidence required to prove capital murder and how that evidence related to special issue number one on future dangerousness in the punishment phase. After this explanation which included the state's burden of proof on future dangerousness,

8

Merrifield agreed that he could follow the law and would not automatically answer the issue "yes" unless the state met its burden beyond a reasonable doubt. He also said that he would vote for a life sentence if presented with sufficient mitigating evidence. On this record, the trial court's conclusion that Merrifield was not biased is not an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Dorsey also claims that venire persons O'Keefe, Brunson and Staten were biased because they said they would not consider youth as a mitigating factors. Dorsey did not raise this claim as to jurors Brunson and Staten on direct appeal. His claims as to those two jurors were rejected as procedurally barred by the state habeas court and are barred from federal habeas review.

As to the merits, the law is clear that a defendant in a capital case is not entitled to challenge prospective jurors for cause simply because they might view the evidence the defendant offers in mitigation of a death sentence as an aggravating rather than a mitigating factor. Johnson v. Texas, 509 U.S. 350, 368 (1993); Soria v. Johnson, 207 F.3d 232, 244 (5th Cir. 2000).

In addition, Dorsey used peremptory challenges to remove the four venire persons from the jury. Accordingly, even if the court erred in denying his challenges for cause, there was no constitutional violation because the jurors were removed from the jury by his use of peremptory challenges and he has not alleged that the jury that sat in his capital murder trial was not impartial. Ross v. Oklahoma, 487 U.S. 81, 88 (1988). COA is denied on this issue.

IV.

None of the claims raised by Dorsey are sufficient to merit habeas relief or grant of COA in his favor. For the foregoing reasons, we affirm the district court's denial of habeas relief on issues one and two. We also deny his application for COA on the remaining issue.