# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70009

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2016

Lyle W. Cayce
Clerk

WILLARD ALLEN,

Petitioner–Appellee Cross–Appellant,

v.

DARREL VANNOY, Warden Louisiana State Penitentiary,

Respondent–Appellant Cross–Appellee.

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 1:09-CV-218

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

A jury convicted Willard Allen of the capital murder of Herman Ferguson, and Allen was sentenced to death. The Louisiana Supreme Court denied relief in Allen's direct appeal, and his request for habeas relief in the state courts was denied. In federal habeas proceedings pursuant to 28 U.S.C. § 2254, the federal district court granted relief and ordered a new trial. The State has appealed that judgment, and its appeal is pending. Allen has filed a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70009

cross-appeal in this court seeking a certificate of appealability (COA) on nine issues on which the federal district court denied habeas relief. This opinion and order pertains only to Allen's request for a COA.

We grant a COA on three issues: whether the jury impermissibly considered extraneous evidence not presented at trial in violation of the Sixth Amendment right to confront a witness and in violation of due process (Allen's Ground Two); whether the State withheld exculpatory *Brady* evidence (Allen's Ground Six); and whether the state trial court violated Allen's right to due process by appointing an inexperienced, unlicensed and allegedly ineffective investigator, and refusing to make funds available for Allen to hire the investigator of his own choosing (Allen's Ground Ten). We deny a COA as to all other issues raised by Allen.

The panel intends to hear oral argument in this case and to consider the State's appeal at the same time as it considers the issues as to which we have granted Allen a COA.

**I**

Herman Ferguson owned a bar, the Cherokee Club, and was shot six times during an armed robbery of his establishment.[1] He died from those wounds. Deputy Wade Ebert, the investigating officer, upon discovering Allen was at the bar with Ferguson the night of the murder, requested that Allen be questioned.[2] Later that day, another officer spotted Allen's car, stopped Allen, and radioed Ebert.[3] Once Ebert arrived, the officers asked Allen if he owned a .380 caliber handgun, the type of weapon used in Ferguson's murder.[4] Allen

---

[1] *State v. Allen*, 682 So. 2d 713, 716 (La. 1996).

[2] *Id.*

[3] *Id.*

[4] *Id.*

2

No. 14-70009

responded that he did own such a weapon, and that it was in the trunk of his car.[5] The officers then *Mirandized* Allen and asked him to sign a form consenting to a search of his car; Allen obliged.[6] A .380 caliber handgun, spent shell casings, live ammunition, $625 in cash, and a metal cashbox were in the trunk.[7] Allen claimed that on the day of the shooting, he had loaned the firearm to Gabriel Clark,[8] with whom Allen's sister lived. The officers released Allen and questioned Clark, who denied borrowing the weapon from Allen.[9] The next day, the officers brought Allen into the police station and questioned him, whereupon Allen signed a waiver of his *Miranda* rights and confessed to committing the robbery and murder.[10] Allen's confession was as follows:

> Approximately two weeks ago I was talking with Gabriel Clark and we were discussing the amount of money they keep at the Cherokee Club in Campti, La. We were talking about robbing the place. Everytime [sic] Gabriel and I have been together the last two weeks we would discuss robbing the place.
>
> On Monday, September 6, 1993 somewhere around 6:00 P.M. I went over by my sister's apartment in Pecan Park in Campti. A guy by the name of Herbert, I don't know his last name, Gabriel Clark, my sister Velma Lawson and her kids were there. We sat around and watched the Monday Night football game. During half time of the football game Gabriel and I went to get some beer. While we were gone we discussed that that would be a good night to rob the Cherokee Club because there weren't many people there and Herman Ferguson, the owner, was going to stay by himself that night. He lives in a trailer house next to the club.
>
> After the game I left my sister's and drove down to the Cherokee Club. This was somewhere around 11:00 P.M. I got there and shot pool and talked to Herman and drank a few beers.

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 717.

[8] *Id.*

[9] *Id.*

[10] *Id.*

3

No. 14-70009

At the time the club was closing it was just me, Sandra Hicks and Herman Ferguson there. Sandra and I left at the same time. I drove to my sister's, Velma's, house and I talked with Gabriel Clark about robbing the place. He was pushing pretty heavy that we should go ahead and do it because he needed the money. Gabriel then went with me to my Mom's house and we got a bottle of whiskey. We drove from there out towards the Cherokee Club. Gabriel dropped me off just a short distance from the club. We were in my car, a 1971 Buick Regal, white in color. Gabriel was going to the Shell Station at the Hwy 6 and ByPass and wait for me.

I knocked on the door of Herman Ferguson's house and woke him up. I told him my car had quit on me. Herman gave me his keys and told me to take his truck and see if I could fix the car. I took the truck and drove to the Shell Station where Gabriel Clark was waiting. He was sitting in the Station drinking a cup of coffee when I got there. I left my car parked at the Shell Station and Gabriel and I went in Herman's truck back to the Cherokee Club. On the way to the Club I dropped Gabriel off at his mother's house so he could get a dark colored shirt on and we didn't want Herman or anybody to see him getting out of the truck with me. Gabriel and I were to meet at the Club with the intentions [of] robbing Herman. When I got back to the Club Herman was laying on the couch in his trailer waiting for me to get back with his truck. I walked in the trailer and Herman woke up. He got up and I told him my car was fixed. Herman had on a T-shirt, jeans, flip-flop shoes and a cap. Herman and I got into the truck and we drove down the road to where I told him the car was which was almost to Clarence, La. Gabriel and his brother, Joe, were standing out in the yard at their mother's house. Gabriel had already changed shirts and had on a dark colored shirt. We got to where I told him the car was and it wasn't there so we turned around and went back to Herman's house. Herman told me not to worry about my car that we would go back in the morning and find it. Herman told me he was going to lay down and for me to lay down and not worry about it. I asked Herman if I could call my girlfriend, Sue Breazelle, and she lives in Winnfield. I called her and I told her my car was missing and that I needed a ride home. I told Sue not to worry about it, I would get somebody to get me home. After I hung up the phone with her I sat there for awhile. Herman told me the bar was unlocked and I could go get me a beer to calm down

4

and not to worry about it.  I went over to the club and got a beer and came back to the trailer and sat there and drank it.  Herman had gone to bed by then.  Herman's dog started barking at something outside.  Herman came in there and said, "I wonder what the dog is barking at?"  In my mind I knew what the dog was barking, I knew Gabriel was supposed to be outside. I told Herman I would go look.  I went outside and looked around and went back in and told Herman I couldn't see anyone out there.  Herman then went back to bed.  I sat there on the couch for a little while.  I then got up and walked back to Herman's bedroom.  I said, "Herman, I need to ask you something" and Herman said, "What's that my friend".  I told him I need the combination to the safe.  At this time Herman sat up on the side of his bed and asked me what was going on.  I pulled my gun, a 380 cal. automatic and I told Herman I didn't want to hurt him I just wanted the combination to the safe. I had got the gun out from under the seat of my car at the Shell Station and had put it in my back pocket when I picked Gabriel up at the Shell Station in Herman's truck.  Herman started talking to me telling me I didn't need to do this, that it wasn't worth it.  I told him it had already gone too far, that I wasn't the only one involved. Herman talked to me some more, telling me it didn't need to happen.  I told him it was too late, I had already gone too far that I had already pulled the gun and I would be going to jail anyway. I told him I need the money.  Herman said, "Okay, you can have it".  Herman sat there and kept talking to me.  Herman gave the combination to the safe but I couldn't remember what it was.  I asked Herman to repeat it but I couldn't remember so he told me, "Come on, I'll open it for you".  Herman got up and we started out but about halfway down the hall in the trailer Herman tried to attack me.  I overpowered him and said, "Look Herman, I don't want to hurt you, I just want the damn money".  Herman still had on his jeans and a T-shirt but he was bare-foot at this time.  We went over to the club.  We went in the bar, went to the back to the storage room.  Herman kneeled down and opened the safe.  He then stood up and he started talking to me again.  Gabriel Clark was supposed to have been in the club.  He was to have followed us through the back door but he didn't do it.  Herman was still talking to me, telling me I didn't need to do it and not to get crazy. I told Herman to move away that I didn't want to hurt him. Herman started to walk back and said, "No Willard, I can't do it" and he then attacked me.  As Herman and I made contact the gun

went off.  It seemed like the gun wouldn't quit going off.  Herman fell against me and the gun kept going off.  I was trying to push him off me and Herman twisted around and the gun went off again. That's the last shot I can remember and Herman fell on his back. I moved Herman, dragging him about a foot from the doorway.  I then removed the money from the safe.  I stuffed the money into a money bag.  I then left out and locked the door.  I took Herman's truck and drove to the Shell Station where my car was.  I took my car and drove by my sister's house.  When I drove up Gabriel Clark was sitting on the front porch.  I asked him where he had been. Gabriel told me he was at the club and I told him I couldn't see him.  He said he was right by the gate waiting.  I told him Herman was dead, and that was what he was there for, to keep something like that from happening.  I told him if he had been there Herman wouldn't have attacked me.  Gabriel was outside the car door and I gave him what I thought was half the money.  Gabriel wanted the bigger bills because the smaller ones were too bulky.  I then drove on home.

Around 8:00 A.M. Tuesday Morning I got up and went down to the Parade Station to get some gas and I saw Gabriel Clark there.  Gabriel asked me again what had happened the night before.  I told him.  Gabriel wanted a ride to Clarence and I gave him a ride there on my way to Alexandria.  That's the last time I saw Gabriel Clark.

Approximately two weeks ago I traded my 38cal Smith & Wesson to Sue Breazelle for the 380 automatic.

As can be seen from this confession, Allen implicated Clark in the robbery, and Clark was charged with armed robbery.  After Allen's trial had concluded, Clark entered a "no contest" plea to accessory to an armed robbery for his role in the events surrounding Ferguson's death.  Clark was sentenced to three years in prison, but he received credit for time served.  The remainder of his sentence was waived, and he was released from prison after sentencing, subject to probation.

No. 14-70009

James Calhoun was appointed as Allen's trial counsel.[11]  Prior to trial, Allen filed a motion to suppress his confession and a motion for funds to hire a psychiatrist and a private investigator.[12]  The trial court denied his motion to suppress but granted his motion for funds, designating as the investigator Charles Phythian, a 22-year-old undergraduate student with no private investigation experience or licensure.[13]

Allen was convicted after a one-day guilt-phase trial, and sentenced to death after a one-day penalty-phase trial.  His conviction and sentence were affirmed on direct review in September 1996.[14]

After procedural delays not relevant here, Allen filed an amended petition for state habeas relief, which the court denied without an evidentiary hearing in November 2007.  In February 2009, the Louisiana Supreme Court denied Allen's request for review of that ruling.

Allen then filed a petition for federal habeas relief and a motion for summary judgment on one of his jury bias claims.  The magistrate judge recommended that the district court decline to grant habeas relief.  Though the district court adopted some of the magistrate's recommendations, it rejected two and granted relief on one of Allen's jury bias claims and a related claim of ineffective assistance of counsel.  The district court issued instructions for the State to hold a new trial or release Allen.

The State appealed from this judgment, and Allen cross-appealed from the district court's denial of a COA as to his other requested grounds for relief. This opinion and order concerns only Allen's cross-appeal.

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 720.

[14] *Id.* at 729.

No. 14-70009

## II

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Allen's cross-appeal.[15] AEDPA requires a habeas petitioner to obtain a COA before this court reviews a district court's denial of habeas relief.[16]

Issuance of a COA is appropriate only if the applicant has "made a substantial showing of the denial of a constitutional right."[17] Where, as here, the petitioner faces the death penalty, "any doubts as to whether a COA should issue must be resolved" in the petitioner's favor.[18] To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[19]

If a claim has been "adjudicated on the merits in state court proceedings," 28 U.S.C. § 2254(d) applies.[20] Section 2254(d) imposes two significant restrictions on federal review of a habeas claim. First, the federal court's review is limited to "the evidence presented in the state court proceeding."[21] Second, the federal court may not grant habeas relief unless the state court's adjudication was, under § 2254(d)(1), "contrary to, or involved an

---

[15] Pub. L. No. 104-132, 100 Stat. 1214.

[16] 28 U.S.C. § 2253(c)(1)(A).

[17] *Id.* § 2253(c)(2).

[18] *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004) (quoting *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000)).

[19] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

[20] 28 U.S.C. § 2254(d).

[21] 28 U.S.C. § 2254(d)(2); *see Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) (limiting review under § 2254(d)(1) to the record before the state court that adjudicated the claim on the merits).

unreasonable application of, clearly established Federal law, as determined by the Supreme Court,"[22] or, under § 2254(d)(2), "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[23]

Pure questions of law and mixed questions of fact and law are analyzed under § 2254(d)(1).[24] Under the "contrary to" clause, "a federal court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts."[25] Under the "unreasonable application" clause, habeas relief may be granted "if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts."[26]

Pure questions of fact are reviewed under § 2254(d)(2).[27] Further, a state court's factual determinations receive deference under § 2254(e)(1) and are "presumed to be correct."[28] The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[29]

Allen identifies the nine claims that he raises in this court by using the claim number that he used in the federal district court. To reduce the opportunity for confusion, we will do the same, and we will consider his claims in the order in which he briefed them in our court.

---

[22] 28 U.S.C. § 2254(d)(1).

[23] 28 U.S.C. § 2254(d)(2).

[24] *Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005).

[25] *Id.* (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

[26] *Id.*

[27] *Id.*

[28] *See Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011).

[29] *Id.*

No. 14-70009

## III

Allen contends that one of the jurors, James Chester, considered evidence that was not presented at trial, shared this information with other jurors, and that this violated the Sixth Amendment confrontation right and the right to due process (Ground Two).  Chester, who worked for the Fire Department, stated during voir dire that he was friends with two Sheriff's deputies who might be prosecution witnesses, had discussed the case with them, and had formed an opinion about the case.  After trial, Chester signed an affidavit which stated that while he was a venireman, he told other members of the venire about his discussions with the deputies and shared his belief that Allen was guilty.  Some of these venire members were seated on the jury.

The state habeas court disposed of this issue on evidentiary grounds, ruling that Chester's affidavit supporting this claim was inadmissible under Louisiana Code of Evidence Article 606(B).  An evidentiary ruling is a question of law, and § 2254(d)(1) deference applies.[30]  Whether the affidavit actually shows that the jury improperly considered extraneous evidence is a question of fact,[31] analyzed under § 2254(d)(2).

The state habeas court held Chester's affidavit inadmissible under Louisiana Code of Evidence Article 606(B)[32] because it did not demonstrate the

---

[30] *Martinez Perez v. Dretke*, 172 F. App'x 76, 83 (5th Cir. 2006) (per curiam).

[31] *Oliver v. Quarterman*, 541 F.3d 329, 341-42 (5th Cir. 2008) (citing *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

[32] Article 606(B) states:

Inquiry into validity of verdict or indictment.  Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the*

10

exertion of outside influence on the jury or indicate the jury was exposed to any extraneous prejudicial information.  The federal district court expressed "significant disagreement" with the narrowness of the state habeas court's interpretation of Article 606(B) but declined to disturb this ruling, concluding it was neither contrary to nor an unreasonable application of Supreme Court precedent.

As a preliminary matter, "federal courts sitting in habeas do not review state courts' application of state evidence law."[33]   Therefore, we assume without deciding that the state court correctly applied state law to exclude the affidavit.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."[34]   A fundamentally unfair trial is one that has been "largely robbed of dignity due a rational process."[35]   The ruling must concern evidence constituting "a crucial, critical, highly significant factor upon which the jury based its verdict of guilty."[36]

---

*question whether any outside influence was improperly brought to bear upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury's attention.*  Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (emphasis added).

[33] *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010).

[34] *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted); *see Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) ("We conclude that the exclusion of this critical evidence . . . denied [petitioner] a trial in accord with traditional and fundamental standards of due process.").

[35] *Gonzales v. Thaler*, 643 F.3d 425, 430 n.20 (5th Cir. 2011) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984)).

[36] *Id.* at 431 (quoting *Whittington v. Estelle*, 704 F.2d 1418, 1425 (5th Cir. 1983)).

No. 14-70009

Allen submits that the state habeas court's application of Article 606(B) rendered his trial unfair based on two Supreme Court decisions: *Irvin v. Dowd*[37] and *Mattox v. United States*.[38]  In *Irvin*, a habeas case, there had been extensive pre-trial publicity, and though the defendant's motion to change venue had been granted in part, the trial was conducted in a neighboring county in which there had been much publicity as well.  Eight of the twelve jurors said in voir dire that they believed the defendant was guilty and that he had committed other related murders, as reported in the press.  The Supreme Court held that the defendant's right to due process had been violated, and it granted habeas relief.[39]

The *Mattox* decision articulated the common-law extraneous-evidence exception to the general prohibition on the admissibility of post-trial juror testimony[40] that Article 606(B) of the Louisiana Code and Federal Rule of Evidence 606(b) codified essentially verbatim.[41]  The Supreme Court summarized in *Tanner v. United States*,[42] "[i]n *Mattox*, this Court held admissible the testimony of jurors describing how they heard and read prejudicial information not admitted into evidence."[43]

Under *Mattox* and its progeny, evidence of "internal" jury communications are inadmissible via post-trial affidavit, but evidence of "external" influence is admissible.[44]  "'External' matters include publicity and

---

[37] 366 U.S. 717 (1961).

[38] 146 U.S. 140 (1892).

[39] *Irvin*, 366 U.S. at 721-23.

[40] *Mattox*, 146 U.S. at 149.

[41] FED. R. EVID. 606(b) advisory committee's note.

[42] 483 U.S. 107 (1987).

[43] *Id.* at 117.

[44] *Id.* at 117-18.

12

No. 14-70009

information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room."[45]  Other Supreme Court cases indicate that third-party comments to jurors can serve as external influences sufficient to render an affidavit admissible, such as a bailiff's comments regarding a defendant and a bribe offered to a juror.[46]

Reasonable jurists could debate whether the state court unreasonably applied Supreme Court precedent when it held that Chester's statements do not involve external influences.  Because the state habeas court made a factual finding that the jury was not biased, Allen bears the burden of rebutting this finding by clear and convincing evidence.[47]  Reasonable jurists could debate whether the statements in the affidavit (i.e., "[t]his information strongly influenced our deliberations") rebut the presumption of impartiality by clear and convincing evidence.  We grant a COA with respect to Ground Two.

**IV**

Allen contends that his inculpatory statement was coerced and then introduced against him at trial in violation of his Fifth Amendment right against self-incrimination (Ground Twelve).  This court reviews the voluntariness of a confession, a legal question, under § 2254(d)(1).[48]  The AEDPA standard is whether reasonable jurists could debate whether the state habeas court's conclusions were "contrary to, or involved an unreasonable

---

[45] *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (citing *Tanner*, 483 U.S. at 117-19).

[46] *Tanner*, 483 U.S. at 117 (citing *Parker v. Gladden*, 385 U.S. 363, 365 (1966); *Remmer v. United States*, 347 U.S. 227, 228-30 (1954)).

[47] *Oliver v. Quarterman*, 541 F.3d 329, 341-42 (5th Cir. 2008) (citing *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

[48] *Bobby v. Dixon*, 132 S. Ct. 26, 29 n.1 (2011) (citing *Miller v. Fenton*, 474 U.S. 104, 110 (1985)).

application of, clearly established Federal law, as determined by the Supreme Court."[49]

Allen maintains that, during his interrogation, "he was promised that he would be charged with manslaughter and would likely serve only seven years if he confessed, and was threatened that if he did not confess, his sister would be prosecuted for the crime and would lose [custody of] her children."  The state habeas court held this claim procedurally defaulted and, in the alternative, meritless.

Under the version of Louisiana Code of Criminal Procedure Article 930.4(B) then in effect, if a habeas application "alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."[50]  Allen raised two pre-trial motions to suppress the confession; the trial court denied both.  On direct appeal, Allen litigated the denial of his motions to suppress with respect to certain Fourth Amendment and *Miranda* claims, but did not preserve for appellate review the issue of whether his confession was coerced.[51]  Accordingly, the state habeas court did not err when it exercised its discretion to deny relief under 930.4(B) because Allen raised the claim at the trial court level and "inexcusably failed" to pursue it on appeal.

A federal court will generally refrain from reviewing a question decided by the state court on procedural grounds if such grounds are adequate and independent.[52]    Allen does not challenge the adequacy of the procedural bar

---

[49] 28 U.S.C. § 2254(d)(1).

[50] The new text, effective August 1, 2014, states: "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court *shall* deny relief." (emphasis added).

[51] *State v. Allen*, 682 So. 2d 713, 718-20 (La. 1996).

[52] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

at issue here, but even if he did, his challenge would fail.  A procedural bar is adequate if it is "firmly established and regularly followed."[53]  Here, although the Fifth Circuit has not specifically addressed Article 930.4(B), it has upheld applications of other procedural bars contained in Article 930.4, and federal district courts have uniformly affirmed state habeas decisions resting on 930.4(B).[54]

A procedural bar is independent if the last state court "clearly and expressly" indicated that its judgment rests on that ground.[55]  Here, the state habeas court explicitly based its decision on the procedural bar provided for in Article 930.4(B).

Allen observes in a footnote that a procedural bar "does not preclude federal habeas review when the petitioner shows either: 1) cause for his default and prejudice as a result of the federal violation; or 2) that the federal court's failure to review the claim will result in a 'fundamental miscarriage of justice.'"[56]  He does not argue that he received ineffective assistance of counsel in this regard.  A fundamental miscarriage of justice occurs in the procedural bar context only "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction."[57]  Allen asserts, in a single

---

[53] *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011).

[54] *See, e.g.*, *Ardison v. Cain*, 264 F.3d 1140, at *4-5 (5th Cir. 2001) (unpublished table decision) (affirming the district court's judgment that the petitioner's claim was procedurally barred under Article 930.4(D)-(E)); *Martinez v. Cain*, No. 12-1458, 2012 WL 7810735, at *7-8 (E.D. La. Nov. 30, 2012); *Thomas v. Cain*, No. 11-02103, 2012 WL 1885088, at *4 (E.D. La. May 23, 2012).

[55] *Coleman*, 501 U.S. at 735.

[56] *See Coleman*, 501 U.S. at 750 ("[F]ederal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

[57] *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (quoting *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)) (internal quotation marks omitted).

sentence in a footnote that he "maintains his innocence."  But to make the necessary showing of innocence, a petitioner must demonstrate that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."[58]  Allen failed to present any new evidence to the state habeas court tending to demonstrate his factual innocence, and he has failed to make this showing.[59]

Allen asserts, once again in conclusory fashion and in a single sentence, that "it is debatable among jurists of reason whether an evidentiary hearing is needed" to resolve the issue of whether his confession was coerced.  Allen has failed to brief this claim adequately.  In any event, if a party has failed to develop the factual basis for a claim in state court proceedings, this court lacks discretion to grant a hearing unless the claim relies on a new, retroactively applicable rule of law, or the factual predicate could not have been discovered through the exercise of reasonable diligence.[60]  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."[61]  Allen failed to request an evidentiary hearing on this matter during the state postconviction proceeding.  Therefore, reasonable jurists could not debate that Allen failed to demonstrate the minimum diligence required of him under 28 U.S.C. § 2254(e)(2).

Allen's request for a COA on his "Ground Twelve" is denied.

---

[58] *Reed v. Stephens*, 739 F.3d 753, 767 (5th Cir. 2014) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)) (internal quotation marks omitted).

[59] *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[60] 28 U.S.C. § 2254(e)(2).

[61] *Burton v. Terrell*, 576 F.3d 268, 273 (5th Cir. 2009) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 437 (2000)).

No. 14-70009

**V**

Allen's briefing combines two of his claims (Grounds Six and Seven), in which he argues that the State withheld *Brady*[62] evidence and used its prosecutorial discretion to render a key witness unavailable at trial, depriving Allen of due process.  We first consider the *Brady* claim.

Allen contends that the State did not disclose before trial that Clark was an informant for an officer, Wade Ebert, who investigated Ferguson's murder, or that Clark was negotiating a plea agreement before Allen's trial.  Allen argues that his counsel could have used this information to cross-examine Ebert at trial to show the jury that the likely murderer (Clark) was not adequately investigated or charged because of his cooperation with law enforcement in other cases.  Ebert testified that he had no reason to disbelieve Clark's statement that he did not have Allen's gun the night Ferguson was killed.

Additionally, the State did not disclose Ebert's handwritten notes that referred to Ferguson's (the victim's) girlfriend, Kelly Trichel, and the fact that she owned a .38 caliber handgun, the same caliber as the murder weapon, as well as the fact that she apparently had a "big fight" with Ferguson the night of the murder.  Allen contends that he could have used the prosecutor's notes to identify Trichel as a possible suspect.

Allen argues that the State should also have disclosed telephone records it obtained from South Central Bell reflecting calls from Ferguson's residence and the Cherokee Club on the night of the murder which showed that, contrary to Allen's confession, he did not make a phone call the night of the murder from Ferguson's residence or the Cherokee Club:

---

[62] *Brady v. Maryland*, 373 U.S. 83 (1963).

According to Allen's inculpatory statement, which was read in its entirety at trial, Allen made a telephone call to Sue Brazzell during the time that he was purportedly at the Cherokee Club and Ferguson's residence.  Allen, however, called Brazzell from his mother's house.  Thus, the telephone company's return on that subpoena—which was not produced to Allen by the State—would have shown that no such telephone call was made from the Ferguson residence or the Cherokee Club to Brazzell.  This absence of a record is exculpatory for two reasons.  First, Brazzell testified that she received a phone call from Allen the night that Ferguson was killed.  If this phone call did not originate from the Cherokee Club or Ferguson's residence, Allen must have been elsewhere when he made the call.  Second, this inconsistency with Allen's inculpatory statement undermines the truthfulness and reliability of the statement—a central issue at trial.

Under *Brady*, the State has an affirmative obligation to disclose exculpatory evidence.[63]  The Supreme Court has "disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes."[64]  The State violates due process when it suppresses evidence, favorable to the defense, which is material either to guilt or punishment and could not have been discovered through the exercise of due diligence.[65]  Evidence is material if, had it been disclosed to the defense, there is a reasonable probability that the result of the proceeding would have been different.[66]  A reasonable probability is one "sufficient to undermine confidence in the outcome."[67]

The state habeas court, after noting that the Louisiana Supreme Court had held that "[t]he record fails to show that the defendant was denied access

---

[63] *Id.* at 87.

[64] *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

[65] *Id.*; *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

[66] *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion).

[67] *Id.* (quoting *Strickland v. Washington*, 460 U.S. 668, 694 (1984)).

to any evidence he requested," determined that the disputed evidence "does not outweigh, or contradict, the mass of evidence the jury had at its disposal to convict the defendant, including the confession, the co-defendant's statements, and the presence of the murder weapon in the petitioner's possession."

The State contends that Allen's *Brady* claims were waived in federal district court because he only incorporated them by reference to his state habeas application. The federal magistrate judge concluded that it would consider the merits of the *Brady* claim regarding Clark's role as an informant even though it was first raised in Allen's reply brief in federal district court. As to this aspect of the *Brady* claim, the magistrate found, and the federal district court agreed, that Allen had failed to sustain his burden of establishing prejudice. With regard to the failure to disclose the investigator's notes about Ferguson's girlfriend's ownership of a .38 caliber hand gun and their fight, and with regard to the failure to disclose the phone records, the magistrate judge concluded that these issues were waived. The magistrate judge reasoned that though these issues had been briefly mentioned in the state petition for habeas relief that was attached to the federal petition and purportedly incorporated by reference, they were not briefed in either the body of the federal petition or in Allen's reply brief in federal court, and they were therefore inadequately briefed or waived. The district court adopted these findings and conclusions. We reserve decision as to whether these two aspects of the *Brady* claim were waived and will consider that question among the issues as to which a COA is granted.

With regard to the fact that Clark was an informant for law enforcement officials, the magistrate judge reasoned that Clark was not called as a witness at trial. Clark was incarcerated on the armed robbery charges at the time of Allen's trial in the jail located in the same building as the trial court courtroom in which Allen's trial occurred. Allen's counsel took initial steps to call Clark

as a witness but failed to subpoena or request the presence of Clark's counsel. The magistrate judge concluded that since Allen could have but did not call Clark to the stand, he could not have examined him about his assistance to authorities as an informant. The magistrate judge also reasoned that the State denied that there was any plea or other agreement with Clark at the time of Allen's trial and the state courts had found that there was no plea agreement until after Allen was convicted. The magistrate also concluded that "[t]he fact that law enforcement may have, early in the case, relied on an informant who is not entirely credible is irrelevant. It that informant does not testify at trial, the State must provide other evidence which proves the defendant's guilt . . . beyond a reasonable doubt."

A claim under *Brady v. Maryland* presents a mixed question of law and fact, and § 2554(d)(1) deference applies.[68] Accordingly, the standard of review is whether reasonable jurists could debate whether the state habeas court's disposition of Allen's *Brady* claim was contrary to or involved an unreasonable application of established Supreme Court precedent or the issues presented are adequate to deserve encouragement to proceed. We conclude that the issue deserves encouragement to proceed, and we grant a COA as to Ground Six.

**VI**

In Ground Seven, Allen contends that the State "compounded" *Brady* violations by using its prosecutorial discretion to ensure that Clark, who Allen contends is probably the murderer, would be unavailable to testify at Allen's trial. Armed robbery charges were pending against Clark during Allen's trial, and Allen observes that Clark would have in all likelihood asserted the Fifth Amendment had he been called as a witness due to Clark's role in the robbery of Ferguson. Allen asserts that the State did not accept Clark's guilty plea

---

[68] *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009).

until the day after the conclusion of the penalty phase of Allen's trial and that it did so in order to prevent Clark from testifying. Citing *Wayte v. United States*,[69] Allen contends that this is an unconstitutional exercise of prosecutorial discretion.

Prosecutorial misconduct is an issue of law reviewable under § 2254(d)(1).[70] The inquiry is whether reasonable jurists could disagree as to whether the state habeas court unreasonably applied Supreme Court precedent to deny relief as to Allen's abuse-of-prosecutorial-discretion claim.

The record reflects that Allen's lawyer at trial, Calhoun, knew that Clark was also a suspect in the case and that Allen was claiming he had loaned Clark his weapon on the night of the murder. The trial judge issued a subpoena for Calhoun to question Clark at trial, but, to protect Clark's privilege against self-incrimination, the judge warned Calhoun that he would also need to subpoena Clark's attorney. Calhoun did not attempt to obtain a subpoena for Clark's attorney, and Clark was not called as a witness at trial.[71]

The state habeas court held that "the District Attorney has discretion to prosecute cases in the way it seems fit. This claim is wholly without merit." The district court adopted the magistrate's finding that, "[t]he fact that a witness is incarcerated simply does not make that witness unavailable to testify. The [s]tate did not 'abuse' its charging discretion by charging Clark with armed robbery. There is absolutely no merit to this argument."

Because Calhoun failed to exercise the due diligence necessary to question Clark, the State cannot be said to have unlawfully withheld evidence

---

[69] 470 U.S. 598 (1992).

[70] *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008).

[71] *See State v. Allen*, 682 So. 2d 713, 726 (La. 1996).

No. 14-70009

from the defense.[72]    Allen has failed to show that the state habeas court unreasonably applied any Supreme Court precedent.  The decision in *Wayte v. United States* states the unremarkable proposition that "[s]electivity in the enforcement of criminal laws is . . . subject to constitutional constraints."[73] The Supreme Court has never before held that a prosecutor violates the constitutional rights of a criminal defendant by waiting until after trial to finalize a plea deal with another suspect.  Furthermore, the state trial judge repeatedly informed Allen's counsel, Calhoun, that he was free to interview Clark, so long as he first subpoenaed Clark's lawyer.  Calhoun repeatedly failed to do so.  Reasonable jurists could not debate that the state habeas court's denial of Allen's abuse-of-prosecutorial-discretion claim did not involve an unreasonable application of Supreme Court precedent.  We therefore deny a COA with respect to Ground Seven.

## VII

The district court granted habeas corpus relief with regard to Allen's contention that James Chester exhibited bias during voir dire and should not have been empaneled as a juror.  Allen contends, in Ground Three, that two other members of the venire indicated during voir dire that they could not serve impartially, the state trial court refused to excuse them for cause, and Allen was required to use two peremptory challenges to strike them.  Allen argues that this resulted in a jury that was not impartial, citing *Ross v. Oklahoma.*[74]

---

[72] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

[73] 470 U.S. at 608.

[74] 487 U.S. 81 (1988).

22

No. 14-70009

Whether a juror was biased is an issue of fact reviewable under § 2254(d)(2).[75] The state habeas court's findings on the matter are entitled to § 2254(e)(1) deference, and Allen must rebut them by clear and convincing evidence. The relevant inquiry is whether reasonable jurists could debate whether the state habeas court's determination of facts was unreasonable.

Clifton Smith, a member of the venire, said during voir dire that he knew the victim, Ferguson, and the co-owner of the Cherokee Club, Mary Messick. Exchanges occurred during voir dire as to whether Smith could be impartial in light of these friendships. Judy Dixon, another venireperson, said during voir dire that her daughter was a friend of the victim's girlfriend and that her daughter worked with the girlfriend's sister.

The state habeas court denied relief, reasoning that "[t]he law does not require that a jury be composed of individuals that are totally unacquainted with the defendant or testifying witnesses." The federal district court affirmed on grounds that the trial judge did not err in denying his challenges for cause because the evidence does not show that the prospective jurors were biased against Allen, and because, even if they were, the fact that Allen was forced to use peremptory challenges did not prejudice him. We agree.

First, the state court's determination that Smith and Dixon were not biased was not unreasonable under 28 U.S.C. § 2254(d)(2). A juror is constitutionally biased if his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."[76] Smith testified that he did not know Ferguson all that well, and that he was a "business person" with whom Smith sometimes drank at the

---

[75] *Dorsey v. Quarterman*, 494 F.3d 527, 533 (5th Cir. 2007) (citing *Wainwright v. Witt*, 469 U.S. 412, 423-24 (1985)).

[76] *Ross*, 487 U.S. at 85 (quoting *Wainwright v. Witt*, 482 U.S. 926, 107 (1987) (internal quotation marks omitted)).

Cherokee Club. "Friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias."[77]  When asked whether he would "be comfortable in returning a verdict of not guilty," Smith noted that he could do so if he was not convinced that Allen was guilty based on the evidence adduced by the State.  Because Smith expressed that he could faithfully discharge his duties as a juror, reasonable jurists could not debate whether Allen has failed to rebut by clear and convincing evidence the state habeas court's determination that he was not biased.

Dixon stated: "the man that was killed was seeing a childhood friend of my daughter and my daughter also works with her sister."  As with Smith, friendship alone is insufficient to warrant a finding of bias; friendship between a potential juror's daughter and the girlfriend of the victim of a crime is even more attenuated than the relationship between Smith and Ferguson.[78]  Further, Dixon confirmed her ability to "listen to each of the witnesses, all of them, and make up [her] own mind as to how much weight is to be given to their testimony, as to the believability of their testimony, why they're testifying."  Accordingly, reasonable jurists could not debate that Allen failed to show by clear and convincing evidence that the friendship between Dixon's daughter and Trichel rendered Dixon constitutionally biased.

Second, even if Smith and Dixon were constitutionally biased under *Ross*, Allen's claim would still fail because he has not shown that he was prejudiced by being forced to use peremptory challenges.  Under *Ross*, "peremptory challenges are not of constitutional dimension. . . . They are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to

---

[77] *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003).

[78] *Id.*

## No. 14-70009

achieve that result does not mean the Sixth Amendment was violated."[79] While the lower court determined that the jury was biased, that determination was based solely on the inclusion in the jury of one juror, James Chester. Louisiana provided Allen with twelve peremptory challenges.[80] Allen had two peremptory challenges remaining at the time Chester was accepted into the jury. The state trial judge's denial of Allen's challenges for cause to the inclusion of prospective jurors Smith and Dixon did not prejudice him because he had peremptory challenges remaining when Chester was accepted (and at any rate, Calhoun could have challenged Chester's inclusion for cause). Allen does not argue that any objectionable juror was seated due to the lack of a peremptory challenge.

Reasonable jurists could not debate that the state habeas court's ruling as to the jury bias claims at issue here was not based on an unreasonable determination of the facts. A COA with respect to Ground Three is therefore denied.

### VIII

Allen maintains that the firearm and bullet fragment evidence, and expert testimony regarding that evidence, was so unreliable that the State's use of it violated his right to due process (Ground Five). He argues that this evidence is "unconstitutionally unreliable." He also seeks an evidentiary hearing on this issue.

Allen raised some physical-evidence claims in state court, and the state habeas court held those claims procedurally barred under Article 930.3 of the Louisiana Code of Criminal Procedure, which precludes habeas relief except

---

[79] *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citations omitted).

[80] *See* LA. CODE CRIM. P. art. 799.

when premised on one or more of an exclusive list of acceptable grounds.[81]  A state procedural bar will preclude federal habeas review if the bar is independent and adequate.[82]  This court has held, in an unpublished opinion, that Article 930.3 is an independent and adequate state ground to deny relief, and the federal district courts that have addressed the issue have concurred.[83] To the extent that Allen's grievance amounts to a routine evidentiary ruling, Article 930.3 bars this court from addressing his claim.

In his federal petition, Allen alleges that the evidentiary rulings were so egregious as to violate his right to due process under the federal Constitution. Article 930.3(1) permits habeas petitioners to bring federal constitutional claims, and Allen's claims would not have been procedurally barred under this Article of Louisiana law.

---

[81] Article 930.3 provides:

> If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:
>
> (1)     The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;
>
> (2)     The court exceeded its jurisdiction;
>
> (3)     The conviction or sentence subjected him to double jeopardy;
>
> (4)     The limitations on the institution of prosecution had expired;
>
> (5)     The statute creating the offense for which he was convicted and sentenced is unconstitutional; or
>
> (6)     The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
>
> (7)     The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[82] *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

[83] *E.g.*, *Hull v. Stadler*, 234 F.3d 706, at *1 (5th Cir. 2000) (per curiam) (unpublished table decision); *Richard v. Rogers*, 555 F. Supp. 2d 652, 655-56 (M.D. La. 2008); *Dedmond v. Cain*, No. Civ. A. 03-3375, 2005 WL 1578086, at *8 (E.D. La. June 30, 2005).

No. 14-70009

The State asserts that Allen failed to exhaust in state court his federal constitutional claims concerning physical evidence. The State notes that Allen argued in state court that the evidence was inadmissible under state evidence law, not federal due process jurisprudence.

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner must exhaust state court remedies, and "[t]he Supreme Court has required a petitioner to be clear that he is making a constitutional argument in his state habeas petition."[84] Allen failed to exhaust his unreliable-evidence claim because he failed to cite any federal law whatsoever in his state habeas petition and gave no indication that his claim arose under the federal constitution as 28 U.S.C. § 2254(b)(1)(A) requires. "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."[85]

Nevertheless, this court may deny an application for a writ of habeas corpus on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."[86] Allen's claims fail on the merits.

Regarding his *Daubert* claim, Allen argues before this court that the State expert's "firearm toolmark analysis testimony [] does not meet the requirements of admissibility under *Daubert*." But he fails to analyze any of the *Daubert* factors. Conclusory arguments cannot serve as a basis for habeas relief.[87]

---

[84] *Canales v. Stephens*, 765 F.3d 551, 577 (5th Cir. 2014) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

[85] *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam).

[86] 28 U.S.C. § 2254(b)(2); *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004).

[87] *See Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000).

No. 14-70009

Regarding his unreliable-evidence claim, Allen alleges that the State did not establish a proper chain of custody for bullet fragments to tie Allen to Ferguson's murder.  To support this allegation, he observes that Officer Ebert stated in his incident report that he located Allen's .380 handgun in Allen's car, and that "[t]he clip with four live rounds was located on the console of the car."  But the North Louisiana Criminalistics Laboratory, according to an evidence transfer receipt, received only "three (3) 380cal test rounds."  Ten months later, Officer Ebert provided two more bullet fragments to the crime lab that he had allegedly recovered from the Cherokee Club but which "were not originally transferred to the crime lab as they appear[ed] to be inadequate for testing."

At trial, the State relied on the expert testimony of Richard Beighley to show, via firearm-toolmark analysis, that the two bullet fragments recovered from the victim's body were fired by the .380 handgun found in Allen's car. Allen does not explain what misdeeds he believes occurred.

The coroner's report showed that two bullet fragments *were* in fact recovered from Ferguson's body; the coroner also testified to this effect at trial, though he did state that he "thought the [bullet fragment] in the arm was better preserved than [the one presented at trial]."  While these facts do not definitively resolve whether the bullet fragments adduced at trial were in fact the ones the coroner initially extracted from Ferguson's body, they do not support Allen's theory.

A state court's evidentiary rulings warrant habeas relief only if they are so extreme as to constitute a denial of "fundamental fairness," and the wrongfully-admitted evidence must have played a "crucial, critical, and highly significant role in the trial." [88]  Here, while the firearm testimony did play a

---

[88] *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).

role in the trial, the state habeas court found the conviction could be sustained based on the other evidence adduced at trial alone. This conclusion is not unreasonable: Allen could have been convicted based only on his confession supported by the State's other circumstantial evidence—that he was the last one to leave the Cherokee Club the night of the murder, and that police found what were likely the fruits of the crime in his car trunk. The admission of two bullet fragments into evidence did not play a "critical" role in Allen's conviction, and consequently did not deny Allen a fundamentally fair trial.

The claim also fails because reasonable jurists could not debate that the trial court had discretion to allow the bullet fragments into evidence. "[A] trial judge is correct in allowing physical evidence to be presented to the jury as long as a reasonable jury could decide that the evidence is what the offering party claims it to be."[89] Here, the coroner's report and testimony were sufficient to authenticate the fragments on which they relied. The fact that Ebert had custody of two fragments during the period between the crime and the trial affects only the weight, and not the admissibility of the evidence.[90] The jury could have reasonably given weight to testimony regarding the bullets.

Allen also requests that the district court be required to hold an evidentiary hearing on his *Daubert* and unreliable-evidence claims. We conclude that an evidentiary hearing could serve no purpose. Under *Cullen v. Pinholster*, a federal court in a § 2254 proceeding is not permitted to consider evidence that was not presented to the state court if it is determined on the basis of the state court record that the state court's decision was not contrary to and did not involve "an unreasonable application of[] clearly established Federal law," and was not "based on an unreasonable determination of the

---

[89] *United States v. Casto*, 889 F.2d 562, 568 (5th Cir. 1989).

[90] *See id.* at 569.

facts."[91]    The limitation in "§ 2254(d) applies even where there has been a summary denial" of the merits in state-court proceedings.[92]    Because the state habeas court clearly denied Allen's *Daubert* claim on its merits, and its determination was neither legally nor factually unreasonable, Allen is not entitled to a federal evidentiary hearing on that claim.

With respect to the merits of his federal constitutional unreliable-evidence claim, the decision to grant an evidentiary hearing is "generally left to the sound discretion of district courts," which "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[93]    No evidentiary hearing need be held "if the record refutes the applicant's factual allegations."[94]    Here, the coroner's report from the time of the shooting and trial testimony refute Allen's allegations regarding the unreliability of the physical evidence adduced against him at trial.

A COA is denied with regard to Ground Five.

## IX

In Ground Ten, Allen asserts that the trial court violated his right to counsel and due process because it appointed an inexperienced, unlicensed, and ineffective investigator and refused to make funds available to Allen to hire the investigator of his choosing.  In support of this claim, he argues that neither Calhoun, who was his trial counsel, nor the court-appointed investigator

---

[91] 28 U.S.C. 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

[92] *Cullen*, 563 U.S. at 187.

[93] *Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007).

[94] *Id.*

conducted an adequate investigation. Allen had requested the appointment of Walter D. Baxter, an experienced and licensed investigator.

The trial court appointed Charles Phythian, who was then 22 years old and a student at Northwestern Louisiana State University living in a fraternity house. Phythian had no education in conducting investigations and was not licensed, though he had attended two five-hour workshops. He did not provide a written report to Calhoun. Calhoun moved for a continuance, arguing he did not have the assistance of an effective investigator, and that motion was denied.

Allen cites the Supreme Court's decision in *Ake v. Oklahoma*[95] as precedent for his argument that defendants are entitled to competent expert assistance and the Court's decision in *Kimmelman v. Morrison*[96] in support of his argument that the adversarial process will not function unless defense counsel has done some investigation into the prosecution's case and various defense strategies. He contends that counsel has a duty to make a reasonable investigation.

The Supreme Court of Louisiana was critical of Phythian's performance:

A review of the record also shows that Phythian did a poor job of investigating as he did not take any written statements from witnesses and refused to turn over a written report to the defense until he was paid. It is unclear from the record whether the defense had a choice of private investigators or was forced to accept Phythian.[97]

However, the Louisiana Supreme Court concluded on direct appeal that an investigator was not crucial to this case and it was therefore irrelevant

---

[95] 470 U.S. 68, 80 (1985).

[96] 477 U.S. 365, 384 (1986).

[97] *State v. Allen*, 682 So. 2d 713, 720 (La. 1996).

whether the investigator performed poorly.[98]   The federal magistrate judge concluded that the state habeas court's ruling that any error was harmless was not, under AEDPA standards, unreasonable.   The magistrate judge reasoned that Allen had not alleged "what evidence a competent investigator would have found, how the lack of that evidence impacted [Allen's] defense, and how that evidence would have changed the outcome of the case."

Allen has inadequately argued and briefed with respect to Ground Ten how his counsel, Calhoun, failed to conduct an adequate investigation. However, we conclude that his claim regarding the court-appointed investigator deserves encouragement to proceed further.   We grant a COA with respect to Ground Ten as it pertains to the investigator.

## X

In Ground Eight, Allen asserts that he received ineffective assistance of counsel pretrial, during trial, and in the direct appeal of his case.   Ineffective-assistance claims present mixed questions of law and fact reviewable under § 2254(d)(1).[99]   The standard of review is whether reasonable jurists could debate whether the state habeas court's denial of habeas relief was contrary to or an unreasonable application of *Strickland v. Washington*,[100] which held that a defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant.

The state habeas court determined that "any alleged deficient performance by counsel did not and could not have prejudiced [Allen's] case," because "[t]he District Attorney presented the jury with overwhelming evidence to convict the petitioner of first-degree murder."   The Supreme Court

---

[98] *Allen*, 682 So.2d at 721.

[99] *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).

[100] 466 U.S. 668, 687 (1984).

has held that when a state habeas court bases its decision on the deficient-performance *Strickland* prong and does not analyze prejudice, a federal court reviewing its decision need not afford AEDPA deference to the prejudice analysis.[101]  Similarly, when the state habeas court disposes of the *Strickland* claim solely on the prejudice prong, *de novo* review of the deficient-performance prong is also appropriate.[102]

The district court granted relief on Allen's ineffective-assistance claim respecting Calhoun's failure to challenge for cause Chester's seating on the jury. Allen now sets forth numerous additional allegations of ineffective assistance of counsel.  In particular, he alleges Calhoun rendered ineffective assistance because: (1) he did not interview witnesses called at trial; (2) his trial plan was to call Clark to testify and to create suspicion that Clark had committed the murder; (3) he relied on Phythian's assurances he would investigate Clark, though no such investigation took place; (4) he left the pretrial hearing held to consider the adequacy of the investigation by Phythian before the hearing was over; (5) he rendered ineffective assistance to the defendant in the only prior capital case in which he was counsel; (6) he terminated his appointed co-counsel; (7) he did not obtain the pre-trial statement of Herbert King, one of the State's witnesses, before or during trial; (8) he did not obtain copies of phone records from the Cherokee Club, though they had been subpoenaed by the State; (9) he did not know that Kelly Trichel, Ferguson's girlfriend, owned a

---

[101] *See Pondexter v. Quarterman*, 537 F.3d 511, 523 (5th Cir. 2008) (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

[102] *See White v. Thaler*, 610 F.3d 890, 899 (5th Cir. 2010) ("[B]ecause the state court did not adjudicate the first prong on the merits, we review the deficient performance prong of *Strickland de novo* and the prejudice prong under the more deferential AEDPA standard." (citation omitted)); *cf. Wiggins*, 539 U.S. at 534 ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

.380 pistol, the same caliber weapon used in the murder, and that she had fought with Ferguson the night of the murder; (10) he did not know that Clark was an informant for the Natchitoches Sheriff's Department; (11) he did not remember the voir dire testimony of James Chester or why he would have accepted him as a juror; (12) he failed to introduce evidence that would support suppressing Allen's allegedly inculpatory statement; (13) he did not allow Allen to testify in his own defense; (14) he failed to call relevant guilt- and punishment-phase witnesses at trial; (15) he failed to challenge weaknesses in the State's case; and (16) he failed to challenge the State's use of physical evidence.

A party claiming ineffective assistance of counsel must demonstrate that counsel's performance was deficient and prejudicial.[103]   Representation is deficient if it falls below an objective standard of reasonableness according to prevailing professional norms,[104] and prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[105]   Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[106]

As a preliminary matter, the State again argues, and the magistrate judge's report and recommendation found, that Allen waived any claims he incorporated by reference in his federal habeas petition but failed to actually

---

[103] *Strickland*, 466 U.S. at 688-92 (1984).

[104] *Id.* at 688.

[105] *Id.* at 694.

[106] *Id.* at 690.

argue in his brief.  We will assume, without deciding, that this was not a waiver.

Claim (1)

Allen argues Calhoun rendered ineffective assistance by failing to interview witnesses called at trial, by the State and the defense.  Specifically, he alleges Calhoun should have interviewed Kenneitha Case, Allen's niece, because she had information Calhoun could have used to show that Clark was the sole perpetrator.  Although Case's account paints a more detailed picture of Clark's erratic behavior on the night of the murder, her account largely tracks Allen's confession.  All parties agreed that Clark had participated in the robbery of Ferguson to some extent, and Case's observations about Clark's erratic behavior that night do not contradict the key inculpatory statements in Allen's confession or in Clark's statement.  Accordingly, even if Calhoun performed deficiently by failing to interview Case, the state habeas court's determination that his deficiency did not prejudice Allen's defense is not debatable among reasonable jurists.

Claims (2) and (10)

Allen contends that Calhoun rendered deficient performance by failing to interview Clark before trial and by failing to call Clark to testify at trial.  Calhoun's defense strategy relied at least in part on creating suspicion that Clark was responsible for the murder.  Toward that end, Calhoun repeatedly informed the state trial court of his intention to call Clark as a witness, and the court repeatedly informed Calhoun that he would first need to subpoena Clark's attorney, but Calhoun failed to do so on each occasion.  Calhoun had a duty under *Strickland* to conduct a reasonable investigation:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.[107]

"[A]n attorney must engage in a reasonable amount of pre-trial investigation and, at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case."[108] We will assume, without deciding, that Calhoun rendered deficient performance by failing to interview Clark.[109]

However, the state court was not unreasonable in concluding that this deficiency, if any, did not prejudice Allen. Had Calhoun interviewed Clark, he might have discovered Clark's connection to Officer Ebert or other information. But in the briefing in this case, Allen admits "in truth, [Calhoun] had no idea what Clark would say" and does not say what Clark would have said had Calhoun interviewed him. Allen's confession, combined with the physical and circumstantial evidence against him, was compelling. Ultimately, given the mass of evidence against Allen and the deferential standard of review, reasonable jurists could not debate whether the state habeas court's denial of this aspect of Allen's *Strickland* claim was unreasonable.

<u>Claims (3) and (4)</u>

Allen alleges Calhoun rendered deficient performance by relying on Phythian, an inexperienced investigator, and by leaving a pretrial hearing on

---

[107] *Id.* at 690-91.

[108] *Harrison v. Quarterman*, 496 F.3d 419, 425 (5th Cir. 2007) (quoting *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994)) (internal quotation marks omitted).

[109] *See id.*

Phythian's investigation before the hearing had concluded. Allen has waived this issue because he does not explain why he believes this conduct was deficient, or how he believes it prejudiced his trial.[110]

Claims (5) and (6)

Allen argues that Calhoun rendered ineffective assistance because he had previously rendered ineffective assistance in his only prior capital trial, and because Calhoun terminated the services of his appointed co-counsel without consulting Allen. These are conclusory allegations unsupported by argument or briefing. Accordingly, the claims are either waived or fail on the merits.

Claim (7)

Allen argues that Calhoun "did not have the statement of Herbert King, a witness interviewed by the State, before or during trial." He did not exhaust this claim before the state habeas court. Nevertheless, this court may proceed to the merits and deny a COA under 28 U.S.C. § 2254(b)(2). King's affidavit does not contradict any part of Allen's confession or provide any other material support to Allen's claim. Reasonable jurists could not debate whether the state habeas court's denial of this component of Allen's ineffective assistance claim involved an unreasonable application of *Strickland*.

Claims (8) and (9)

Allen contends that Calhoun rendered deficient performance by failing to obtain copies of phone records from the Cherokee Club and failing to discover that Kelly Trichel, Ferguson's girlfriend, owned a .380 caliber handgun and had fought with Ferguson the night of the murder. The Club's phone records are significant, Allen claims, because he stated in his confession that he called his girlfriend, Sue Brazzell, from the Club, just before he killed Ferguson.

---

[110] *See* FED. R. APP. P. 28(a)(8)(A).

Brazzell testified that she had received a phone call from Allen that night between 3:00 and 4:00 a.m. But the Club's phone records contained no evidence of a phone call to her residence, and Allen now claims he made the call from his mother's house, not the Club. Allen argues the phone records challenge the veracity of his confession. This claim relies on affidavits Allen has procured that were not presented to the state habeas court, and the affidavits are inadmissible in this federal habeas proceeding under *Cullen v. Pinholster*.[111] Even were the affidavits admissible, the state habeas court did not unreasonably determine that the phone records contradicted at most only a "minor detail in [Allen's] own inculpatory confession." The various accounts agree that Allen returned home sometime between 3:00 and 4:00 in the morning, and this timeline does not disrupt the key events in Allen's confession. Therefore, reasonable jurists could not debate whether the state habeas court unreasonably determined that Allen failed to show that Calhoun's failure to obtain the phone records prejudiced Allen's trial.

Similarly, even if Calhoun performed deficiently by failing to interview Trichel about her relationship with Ferguson, the state habeas court's determination that this deficiency did not prejudice Allen's trial was not unreasonable in light of the complete lack of evidence that Trichel committed the murder, and when weighed against Allen's confession and the physical and circumstantial evidence against him.

Claim (11)

Allen's contention that Calhoun "did not remember the voir dire of James Chester or why he would have accepted him on the jury" is irrelevant to Calhoun's effectiveness as counsel at trial.

---

[111] 563 U.S. 170, 182 (2011).

Claim (12)

Allen argues that Calhoun performed deficiently because he failed to introduce evidence that would support suppressing Allen's allegedly inculpatory statement.   Allen's confession played a critical role in the prosecution's case-in-chief, though the conviction was also supported by physical evidence.   Calhoun did file a motion to suppress this statement, but Allen claims the motion was pro forma and failed to address his two primary claims:  that the police promised him he would only receive a sentence of seven years and threatened to prosecute his sister for the crime as a pretext for enabling child protective services to take away her children.   Allen provides no evidence that he had apprised Calhoun of the State's threats and promises and no record of this alleged misconduct exists until it appears in Allen's state habeas petition.   Unsupported allegations do not warrant habeas relief.[112]   In the absence of any evidence to substantiate his claim that Calhoun knew or should have known about the State's alleged conduct, no reasonable jurists could debate whether the state habeas court's denial of Allen's ineffective assistance claim in this respect was unreasonable, and this court must deny a COA.

Claim (13)

Allen claims Calhoun did not allow Allen to testify in his own defense. Allen did not support this claim with any evidence in his state habeas petition. Accordingly, while Allen did, following the magistrate's issuance of his report and recommendation, submit an affidavit affirming the truthfulness of the contents of his habeas petition, this court is not free to include that affidavit in

---

[112] *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." (citation omitted)).

the record under *Cullen v. Pinholster*.[113]  Therefore, reasonable jurists could not debate whether the state habeas court's determination that this claim was wholly unsupported was unreasonable.

Claim (14)

Allen contends Calhoun rendered deficient performance by failing to call a number of witnesses who could have presented favorable evidence during the guilt and punishment phases of his trial.

Regarding the guilt phase, Allen argues that Suzanne Messick would have testified that other people had told her that Clark had told them that he was "Wade Ebert's boy," and that Clark could do "what [he] want[s] to." Calhoun never contacted Messick.  Even assuming these statements were admissible, as the state habeas court found, Clark's status as a police informant did not "outweigh, or contradict, the mass of evidence the jury had at its disposal to convict the defendant" because Allen was convicted chiefly based on his own confession and the physical evidence, and because Clark never testified at trial.  Accordingly, even if Calhoun's failure to contact Messick was deficient, reasonable jurists could not debate the state habeas court's holding that Calhoun's conduct did not prejudice Allen.

Respecting the punishment-phase witnesses, Allen submits affidavits from several individuals who would have testified to Allen's good nature, his devotion to his children, and his peaceful character.  Calhoun called three witnesses during the punishment phase: a psychiatric expert who testified to Allen's history of depression and substance-abuse problems, the officer in charge of the prison where Allen had been held pending trial, who testified that Allen was a model prisoner, and Allen's mother, who testified to Allen's difficult upbringing, his physical and emotional problems, and his hobbies.

---

[113] 563 U.S. at 182.

No. 14-70009

The state habeas court held that because "petitioner's confession to the crime gave a detailed and graphic description of how the crime unfolded," and because this confession was supported by physical evidence, "no amount of legal tactics or strategy would have changed the jury's verdict."    While Calhoun's questioning of the punishment-phase mitigation witnesses was far from ideal, he did elicit some testimony that bore on Allen's character for peacefulness, his emotional and physical struggles, and his moral rectitude. Accordingly, reasonable jurists could not debate the state habeas court's determination that there is no reasonable probability that additional character witnesses would have swayed the jury to impose a life sentence, rather than one of death.

Claims (15) and (16)

Allen alleges Calhoun performed deficiently when he failed to challenge weaknesses in the State's theory of the case and its use of physical evidence. Specifically, he claims Calhoun should have "explore[d] the fact that the victim's vehicle was recovered from the same gas station where Clark reported he had hitched a ride home." First, all agree that Clark played a role in the robbery.   The location of the vehicle was not inconsistent with Allen's own statements regarding Clark's involvement.   Whether Clark hitched a ride home from the Club or from the gas station is a collateral issue in Allen's confession because it does not affect Allen's statement that, after he murdered Ferguson, he drove Ferguson's car to the gas station and then drove home in his own vehicle, which he had left at the station during the crime.   Reasonable jurists could not debate whether Calhoun's failure to challenge a minor part of Allen's confession prejudiced him.[114]

---

[114] *See Self v. Collins*, 973 F.2d 1198, 1214-15 (5th Cir. 1992) (holding that minor inconsistencies between a defendant's two confessions were insufficient to establish coercion); *cf. Banks v. Thaler*, 583 F.3d 295, 325 (5th Cir. 2009) (holding that the state's failure to

No. 14-70009

Allen also claims Calhoun performed deficiently by "fail[ing] to highlight for the jury the physical evidence issues." At a pre-trial evidentiary hearing, Calhoun did challenge the admissibility of the bullet fragments linking Allen to the murder. But the judge ultimately ruled the fragments admissible, and the state habeas court's affirmance of this decision was not unreasonable in light of Supreme Court precedent as discussed above.[115] At trial, two crime-lab technicians testified to support the proposition that the lab had conducted a responsible forensic examination. In each case, on cross-examination, Calhoun brought to the jury's attention the fact that bullet fragments were submitted for forensic examination ten months after the other items of physical evidence. Accordingly, Calhoun did not fail in his obligation to raise the chain-of-custody issue at trial. Further, even if Calhoun performed deficiently by failing to pursue this claim in greater detail, the coroner's report supports the State's version of events, and the jury could still reasonably have found that the fragments presented at trial were what the State said they were.

Allen argues Calhoun rendered ineffective assistance by failing to challenge the State's firearm and toolmark analysis linking the bullet fragments to Allen's gun. The State's expert, Richard Beighley, testified that, through firearm and toolmark analysis, he matched the bullet fragments recovered from Ferguson's body with the .380 handgun the police discovered in Ferguson's car. Calhoun brought some of the shortcomings of this type of analysis to the jury's attention, inquiring how Beighley could identify a positive match given that the type of handgun at issue was mass-produced on machines that created virtually identical weapons. He also challenged Beighley's

disclose information that would have contradicted defendant's confession in minor respects did not create prejudice under *Brady*).

[115] *See supra* Issue 6.

No. 14-70009

qualifications, asked about the margin of error in this type of examination, and inquired whether he had a set of regularly-followed standards to guide his discretion in conducting firearm analysis.  Allen does not explain what more Calhoun could have done to challenge the firearm and toolmark analysis that the State employed in Allen's case.  Accordingly, reasonable jurists could not debate whether the state habeas court unreasonably concluded that Calhoun did not render ineffective assistance in this regard.

We deny a COA on Ground Eight.

## XI

In Ground Seventeen, Allen asserts that the cumulative effect of errors renders the guilty verdict unreliable.  A claim of cumulative error is a question of law reviewable under § 2254(d)(1).[116]

The state habeas court did not address this claim, though Allen did raise it in his petition.  But regardless of this procedural irregularity, this court may deny a COA on the merits.[117]

"The cumulative error doctrine . . . provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal."[118]  The doctrine applies only "where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"[119]

---

[116] *Martinez Perez v. Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006).

[117] 28 U.S.C. § 2254(b)(2).

[118] *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998).

[119] *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

No. 14-70009

We have previously emphasized that cumulative error applies only in "rare instances."[120]  We conclude that this is not such a rare instance, as it is not "the unusual case in which synergistic or repetitive error violate[d] the defendant's constitutional right to a fair trial."[121]  Rather, to the extent any of the three Grounds on which we have granted a COA constitutes error, no reasonable jurist could disagree that they are not the kind of pervasive error that implicates the cumulative error doctrine.  If those errors are not reversible themselves, they do not become reversible when accumulated.  We therefore deny a COA on Ground Seventeen.

\* \* \* \* \*

A COA is GRANTED as to Allen's Grounds Two, Six, and Ten.  A COA is DENIED as to all other claims raised by Allen (including his Grounds Three, Five, Seven, Eight, Twelve, and Seventeen).

---

[120] *See, e.g., United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012).

[121] *Id.  Cf. Chambers v. Mississippi*, 410 U.S. 284, 290-94 & n.3, 302-03 (1973) (holding that a series of rulings by the trial court that denied the defendant an opportunity to cross-examine key government witnesses and present witnesses in his own defense, considered together, deprived the defendant of due process).